OPINION
The plaintiff-appellant, Terry L. Boyd, administrator of the estate of Christina Marie Boyd, appeals the decision of the Paulding County Court of Common Pleas granting summary judgment in favor of the defendants-appellees S.E. Johnson Company, Compaction America, and The McLean Company. The facts and procedural history of the case follow.
On September 12, 1997, Christina Boyd was the victim of an on-the-job accident after being crushed to death by an asphalt roller. At the time of the accident, Christina was employed by S.E. Johnson Company as a roller operator. S.E. Johnson is engaged in the business of road and highway construction and paving. The roller, a Hypac Compactor Model C340C-C350D, was designed to compact asphalt or similar materials on smooth, flat, level surfaces such as roads and highways.
The accident occurred while Christina was moving the roller to a storage area, which was located approximately three and one-half miles from the job site. The roller had to be driven from the job site, located on County Road, to the storage site, located on Township Road 24. Shortly before the accident, Christina's supervisor, Scott Woodard, observed Christina maneuvering the roller along Township Road 24 toward the storage area. According to Woodard, Christina was approaching the three mile mark the last time he saw her alive. Shortly thereafter, the roller was discovered in a ditch alongside the right-hand side of Township Road 24. Christina was killed when the roller overturned and landed on her.
The roller was manufactured and designed by Compaction America. The roller was delivered to a distributor, The McLean Company. In May 1995, the roller was delivered to S.E. Johnson. At the time of the manufacture of the roller, a rollover protection system came as standard equipment, subject to a delete order by the purchaser. S.E. Johnson placed a delete order with The McLean Company, and the price of the roller was reduced accordingly.
A rollover protection system is a safety device consisting of a canopy-like roof structure. The rollover protection system is designed to support the weight of the roller and to keep the operator within the protective canopy in the event of a rollover. Generally, a rollover protection system is effective only when it is used in conjunction with a safety belt.
On September 10, 1998, Terry L. Boyd, administrator of the estate of Christina M. Boyd, filed a wrongful death action in the Paulding County Court of Common Pleas. The complaint alleged that three different defendants were liable for Christina's death. Specifically, Boyd filed suit against the manufacturer of the roller, Compaction America, and the distributor of the roller, The McLean Company, alleging defective design. The complaint alleged that Compaction America had failed to equip the roller with a rollover protection system and did not have safety equipment to keep the driver in the seat when it was manufactured. The complaint further alleged that The McLean Company had sold the roller with knowledge of this defective design. The complaint also set forth a claim against Christina's employer, S.E. Johnson, for intentional tort. The intentional tort claim alleged that S.E. Johnson had required Christina to operate the roller without a rollover protection system and safety belt, a dangerous process or instrumentality, and had knowledge that the dangerous process or instrumentality existed.
The appellees S.E. Johnson, Compaction America, and The McLean Company collectively filed motions for summary judgment. By judgment entry of December 11, 2000, the trial court granted the appellees' motions for summary judgment. The appellant now appeals, asserting the following four assignments of error for our review.
1. The trial court committed error in granting Appellee Compaction America's motion for summary judgment as Appellant's product liability claims were legally sufficient pursuant to Civ.R. 56.
2. The trial court committed error in granting the motions for summary judgment filed by appellee Compaction America and Appellee The McLean Co. as Appellant has lawful claims for breaches of certain implied warranties.
3. The trial court committed error in granting Appellee S.E. Johnson Co.'s motion for summary judgment as appellant's employer intentional tort claim was legally sufficient pursuant to Civ.R. 56.
4. The trial court committed error in granting appellee The McLean Co.'s motion for summary judgment as appellant's supplier liability claims were legally sufficient pursuant to Civ.R. 56.
 Standard for Summary Judgment
Appellate courts review summary judgment determinations de novo and do not grant deference to the trial court's determination. Schuch v. Rogers
(1996), 113 Ohio App.3d 718, 720. Accordingly, we apply the same standard for summary judgment as the trial court. Midwest Specialties,Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 8.
 [Summary judgment is proper] when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party.
Horton v. Harwick Chemical Corp. (1995), 73 Ohio St.3d 679, 686-87, citing Civ.R. 56(C).
In Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, the Ohio Supreme Court held that parties seeking summary judgment must "specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." If the moving party satisfies that burden, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial," and summary judgment is proper if the party opposing judgment fails to set forth such facts.Id., citing Civ.R. 56(E).
For purposes of clarity and brevity, we will address the appellant's third assignment of error first.
3. The trial court committed error in granting Appellee S.E. Johnson Co.'s motion for summary judgment as appellant's employer intentional tort claim was legally sufficient pursuant to Civ.R. 56.
In her third assignment of error, the appellant asserts that the trial court erred in finding that no genuine issues of material fact remain to be litigated with respect to her claim of intentional tort. For the following reasons, we do not agree.
Generally, an employee's only recourse for compensation due to an injury sustained in the course of his or her employment in Ohio is the Worker's Compensation system. However, under the common law, an injured employee may seek compensation directly from the employer if the injury was the result of an intentional tort by the employer. Blankenship v.Cincinnati Milacron Chemicals, Inc. (1982), 69 Ohio St.2d 608.
In order to determine whether an employer has indeed committed an intentional tort resulting in injury to the employee, the trier of fact must apply the tripartite analysis as set forth by the Ohio Supreme Court in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115. The tripartite analysis states, in pertinent part, as follows:
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Id. at paragraph one of the syllabus.
The first element necessary for proof that S.E. Johnson committed an intentional tort is that the employer, S.E. Johnson, must have had knowledge of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation. Thus, in order to satisfy the first prong, the appellant must establish the following: 1) there was a dangerous process, procedure, instrumentality, or condition and 2) S.E. Johnson had knowledge that the dangerous process, procedure, instrumentality, or condition existed.
In determining whether the process, procedure, instrumentality or condition was indeed dangerous, this Court has repeatedly cautioned:
 [D]angerous work must be distinguished from an otherwise dangerous condition within that work. It is the latter of which that must be within the knowledge of the employer before liability could attach." Naragon v. Dayton Power Light Co. (Mar. 30, 1998), Shelby App. No. 17-97-21, unreported, citing Brady v. Safety-Kleen (1991), 61 Ohio St.3d 624. It must be remembered that those injuries that occur in the scope of employment by definition are not intentional torts. "A workplace intentional tort is one suffered outside the scope of employment, beyond the `natural hazard[s]' of one's employment. Were it otherwise, any injury associated with inherently dangerous work" like high voltage electrical work, "could subject an employer to intentional tort liability, whatever the cause." Naragon, at 7.
In order to determine whether an employer had knowledge that such process, procedure, instrumentality, or condition was dangerous, this Court must determine the employer's actual knowledge of the dangerous condition. Fultz v. Baja Boats, Inc. (Feb. 18, 1994), Crawford App. No. 3-93-10, unreported. This Court has cautioned:
 [T]his is not the `reasonable person' standard for determining negligence or recklessness; that is, the fact that the employer should have known it was requiring the employee to work under such dangerous conditions that he would certainly be injured is not enough to establish a case in intentional tort. Rather the determination rests upon a claimant's alleging facts which show the employer's actual knowledge of the situation.
Therefore the scope of our inquiry must focus on whether the appellant has presented evidence from which it might be found that this was an injury associated with "inherently dangerous" work outside the scope of the decedent's employment. Should we conclude that the decedent was exposed to a dangerous process, procedure, instrumentality, or condition, we must further determine whether S.E. Johnson had knowledge that the work was dangerous.
In the case before us, the appellant contends the decedent was unduly exposed to a dangerous process or instrumentality during her employment with S.E. Johnson. Specifically, the appellant claims that S.E. Johnson had required her to operate a roller without a rollover protection system and safety belt, a dangerous process and instrumentality, and had knowledge that the dangerous process or instrumentality existed. The appellant alleges that a genuine issue of material fact remains to be litigated with respect to her claim of intentional tort. The appellant maintains that the evidence established that operating a roller without a rollover protection system and a safety belt is a dangerous process because it utilizes a dangerous instrumentality. The appellant argues that upon viewing the inferences in a light most favorable to her, the evidence before the trial court demonstrated that the decedent's employer required her to perform an assigned task in a dangerous manner and which was substantially certain to result in serious injury or death.
S.E. Johnson, meanwhile, asserts that no genuine issue of material fact remains to be litigated with respect to the appellant's claim of intentional tort because the evidence established that the lack of a rollover protection system and safety belt did not expose the decedent to unnecessary danger within the workplace. Having conducted a thorough review of the record, we agree.
The record is undisputed that the Hypac Compactor Model C340C-C350D was designed to compact asphalt or similar materials on smooth, flat, level surfaces, only. The compactor at issue in this case had no propensity to rollover when operated on smooth, flat, level surfaces. Here, Christina was killed when the roller left the road, proceeded down an embankment, overturned, and crushed her. Clearly, the roller was not used pursuant to specifications or for its intended purpose and S.E. Johnson could not have known of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation.
Moreover, additional safety and operational concerns such as reduced access, egress, maneuverability, and clearance, are inherent with the utilization of a rollover protection system and safety belt system. For instance, it is undisputed that the presence of a rollover protection system also slightly increases the possibility that a roller will tip over on a slope because its center of gravity is higher above the ground. Therefore, a rollover protection system is effective only when it is used in conjunction with a safety belt. A safety belt, however, severely limits the maneuverability of the roller operator and may actually increase the risk of injury.
All of the foregoing evidence leads us to the conclusion that the appellant has failed to set forth specific, facts indicating that a genuine issue of material fact exists for trial. Specifically, the appellant has failed to establish that a genuine issue of material fact exists for trial which demonstrates knowledge by S.E. Johnson of the existence of a dangerous process or instrumentality within its business operation. Therefore, we find that the trial court did not err in granting S.E. Johnson's motion for summary judgment.
Accordingly, the appellant's third assignment of error is not well-taken and is overruled.
1. The trial court committed error in granting Appellee Compaction America's motion for summary judgment as Appellant's product liability claims were legally sufficient pursuant to Civ.R. 56.
In her first assignment of error, the appellant maintains that the trial court erred in finding that no genuine issues of material fact remain to be litigated with respect to her design defect claim against the manufacturer of the roller, Compaction America. The appellant's complaint alleged that the roller was defective in its design because when it left the control of the manufacturer it was not equipped with a rollover protection system and safety equipment to keep the driver in the seat.
Under Ohio products-liability law, "a product is defective in design * * * if, at the time it left the control of the manufacturer, the foreseeable risks associated with its design * * * exceeded [its] benefits." R.C. 2307.75(A). Risks include (1) the nature, magnitude and likelihood of harm resulting from foreseeable uses of or modifications made to the product, (2) the probability that a user of the product may be unaware of the potential for harm, due to the lack of a warning on the product, or the typical user's lack of knowledge about the particular danger posed by the product, and (3) the extent to which the product failed to meet industry standards in effect when it left the control of its manufacturer. See R.C. 2307.75(B). The benefits of a product design are identified by weighing any performance or safety advantages gained by the design used against the cost, technical feasibility, and safety disadvantages posed by any alternative design available at the time the product left the control of its manufacturer. See R.C. 2307.75(C).
In her brief, the appellant contends that a genuine issue of material fact exists as to whether the risks associated with asphalt rollers not equipped with a rollover protection system and safety belt outweigh any perceived benefit. Having taken into consideration the foreseeable risks as well as the benefits associated with its design, we cannot say that a genuine issue of material fact exists for trial. The evidence is undisputed that the propensity of roller operators not to wear a seatbelt increased the hazards of utilizing a rollover protection system. The presence of a rollover protection system also slightly increases the possibility that a roller will tip over on a slope. As we previously stated, safety and operational concerns such as reduced access and egress in emergency situations, and reduced maneuverability and clearance, are inherent in the utilization of a rollover protection system and safety belt system. Moreover, at the time of the accident, there was no recognized standard or government regulation in effect which would have required manufacturers to attach a rollover protection system or safety belt system to the roller in question.
Having reviewed the record before us, we find that no genuine issue of material fact exists which would establish at the time of manufacture the existence of a product defective in design. The appellant has failed to demonstrate that the absence of safety features such as a rollover protection system and safety belt render the machine not reasonably safe for its foreseeable or intended use. Therefore, we cannot say that the trial court erred in rejecting the appellant's design claim and granting summary judgment in favor of Compaction America.
Accordingly, the appellant's first assignment of error is not well-taken and is overruled.
2. The trial court committed error in granting the motions for summary judgment filed by appellee Compaction America and appellee The McLean Company as appellant has lawful claims for breaches of certain implied warranties.
In her second assignment of error, the appellant maintains that the trial court erred in finding that no genuine issues of material fact remain to be litigated with respect to her warranty claims against Compaction America and The McLean Company. Specifically, the appellant alleges that a genuine issue of material fact remains for trial as to whether Compaction America and The McLean Company breached the implied warranties of merchantability (R.C. 1302.27) and fitness for a particular purpose (R.C. 1302.28). For the following reasons, we do not agree.
Ohio recognizes the implied warranties of merchantability and fitness for a particular purpose. See R.C. 1302.27 1302.28. Neither of these two warranties arise as the result of an express agreement between the manufacturer or merchant of goods and the consumer. Rather, both warranties arise solely by operation of the law.
R.C. 1302.27 provides for the implied warranty of merchantability. R.C. 1302.27 states, in pertinent part, as follows:
 (A)Unless excluded or modified as provided in section 1302.29 of the Revised code, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *
R.C. 1302.28 provides for implied warranties of fitness for a particular purpose. It states in pertinent part, as follows:
 Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 1302.29 of the Revised Code an implied warranty that the goods shall be fit for such purpose.
In this case, the appellant based its claim against Compaction America and The McLean Company on a theory of breach of implied warranty. The appellant, however, alleged no set of facts giving rise to such a breach of a duty. Therefore, under the standards of Civ.R. 56(C), Compaction America and The McLean Company were entitled to judgment as a matter of law.
Accordingly, the appellant's second assignment of error is not well-taken and is overruled.
4. The trial court committed error in granting appellee The McLean Co.'s motion for summary judgment as appellant's supplier liability claims were legally sufficient pursuant to Civ.R. 56.
In her fourth assignment of error, the appellant maintains that the trial court erred in finding that no genuine issues of material fact remain to be litigated with respect to her claim against the distributor of the roller, The McLean Company. Specifically, the appellant alleges that a genuine issue of material fact remains to be litigated as to whether The McLean Company acted as a reasonably prudent supplier/seller would have acted under similar circumstances. Having rejected the appellant's previous claims that the roller was defective in design, we cannot say that a genuine issue of material fact remains for trial with respect to this issue. Therefore, the appellant's argument has no merit.
Accordingly, the appellant's fourth and final assignment of error is not well-taken and is overruled.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
SHAW, J. concurs in judgment only.
BRYANT, J. concurs in judgment only.